IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

DARRIYON L. OGLESBY,

    Plaintiff,

v.

SGT. ALLEN SMITH, OFFICER KYLE BRILEY, and CITY OF STATESBORO,

    Defendants.

CIVIL ACTION NO.: 6:19-cv-29

## O R D E R

This matter is before the Court on Defendants' Motion to Dismiss, (doc. 7). Plaintiff Darriyon Oglesby, who is proceeding *pro se*, filed this 42 U.S.C. § 1983 action against Defendants Allen Smith, Kyle Briley, and the City of Statesboro, seeking damages for a 2011 warrantless arrest that led to his incarceration. (Doc. 1.) In response, Defendants filed the at-issue Motion to Dismiss, (doc. 7), to which Plaintiff filed a Response, (doc. 8), and Defendants thereafter filed a Reply, (doc. 10). For the reasons explained more fully below, the Court **GRANTS** Defendants' Motion to Dismiss, (doc. 7), and **DISMISSES with prejudice** Plaintiff's Complaint. The Court **DIRECTS** the Clerk of Court to enter an appropriate judgment of dismissal and to **CLOSE** this case.

## BACKGROUND[1]

This action arises out of an incident that took place in a Walmart parking lot in Bulloch County, Georgia. (Doc. 1-2, pp. 6–7.) On August 7, 2011, Defendants Smith and Briley—officers with the Statesboro Police Department—responded to reports of a potential theft at the local Walmart. (Id. at pp. 5–6; doc. 1-1, pp. 5–6.) When he arrived at the Walmart, Smith spoke with the victim, Ms. Ward, reviewed store security footage, and called in a description of the suspect and the vehicle that he had driven away from the scene. (Doc. 1-2, pp. 6–7.)

Officer Briley, who was in the vicinity of the incident, was dispatched the description of the male suspect and the vehicle. (Doc. 1-1, p. 6.) Briley remembers that he was told to look out for an African-American male wearing a black shirt and red shorts and driving a blue Ford Explorer. (Id. at p. 6.) He was also advised that a vehicle matching the description had reportedly turned onto Harville Road. (Id.) As Briley's supervisor, Smith remained in radio contact with Briley while he looked for the suspect. (Doc. 1, p. 3). After investigating further, Briley observed a blue Ford Explorer parked outside a house at 6046 Harville Road and he reported this to the police department. (Doc. 1-1, p. 7.) At this point, Briley saw a man—later identified as Plaintiff—who, according to Briley, was wearing a black shirt and red shorts, matching the description of the suspect who fled the Walmart parking lot. (Id.) When he learned that Briley had located an individual and vehicle matching the descriptions from his investigation, Smith told Briley to place

---

[1] Many of the facts herein are derived from the exhibits attached to Plaintiff's Complaint, which Plaintiff refers to as "[e]videntiary [e]xhibit[s] . . . confirming an illegal arrest." (Doc. 1, p. 1; see also docs. 1-1, 1-2.) While "a court generally may not look beyond the pleadings" to decide a Rule 12(b)(6) motion, "[t]he pleadings include any information attached to a complaint." U.S. ex rel. Osheroff v. Humana, Inc., 776 F.3d 805, 811 (11th Cir. 2015). Thus, the Court may rely on these documents in deciphering and analyzing Plaintiff's claims and resolving Defendants' Motion.

the individual under arrest. (Id. at p. 9; doc. 1-2, pp. 7–8.) Briley complied with Smith's instruction and arrested Plaintiff. (Doc. 1-2, pp. 7–8.)

While Plaintiff provides no specific details about the charges against him or his alleged "illegal conviction," (doc. 1, p. 2), he does include portions of a transcript entitled "Trial Before a Jury," which states that it is a "[t]ranscript of proceedings heard before the Honorable F. Gates Peed, . . . on the 19th day of April, 2012, in Statesboro, Georgia, in the case State of Georgia v. Darriyon Lamar Oglesby, Case No. 1B11CR597 (Bulloch County Superior Court)." (Doc. 1-1, pp. 2–4; doc. 1-2, pp. 2–4.) While the excerpts filed by Plaintiff are focused on the testimonies of Smith and Briley, Plaintiff did include the transcript's index, which indicates that there was a "Verdict of the Jury." (Doc. 1-1, p. 4; doc. 1-2, p. 4.) According to the transcript, the proceedings, which would include the jury's reaching a verdict, occurred on April 19, 2012. (Doc. 1-1, p. 1; doc. 1-2, p. 1.) According to Plaintiff's own Complaint, he served a five-year sentence after being convicted.[2] (Doc. 1, pp.6–7.)

Plaintiff filed this action against Defendants on April 18, 2019. (Doc. 1.) According to his Complaint, he is proceeding "pursuant to 42 U.S.C. [§] 1983 . . . for [] deprivation of [his] Fourth Amendment Rights and for the deprivation of 'due process' and 'equal protection,' thereof, under, the 14th Amendment of the U.S. Constitution." (Doc. 1, p. 1.) In his Complaint, he repeatedly alleges that Defendant Briley and his supervisor, Defendant Smith, deprived him of his Fourth Amendment Rights by arresting him "illegally" and "without any warrants," entitling him to damages. (Id. at pp. 1–2.) Relatedly, he alleges that the City of Statesboro failed to properly train Smith and Briley, and thereby "participated in the illegal seizure and arrest without an arrest warrant." (Id. at p. 5.) In the "Relief Sought" section of his Complaint, in addition to damages,

---

[2] In his Response in opposition to the Motion to Dismiss, Plaintiff indicates that he was released on April 18, 2017. (Doc. 8, p. 3.)

3

Plaintiff seeks "expunge[ment of] his conviction from the records." (Id. at pp. 6–8.) Defendants collectively move to dismiss pursuant to Federal Rule of Civil Procedure 12(b), alleging that Plaintiff's claims are barred by the statute of limitations. (Doc. 7, p. 1.)

**LEGAL STANDARD**

A motion to dismiss on the ground that a suit or claim was untimely filed falls within the purview of Federal Rule of Civil Procedure 12(b)(6). In considering such a motion, the Court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009) (citing Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262 (11th Cir. 2004)). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true."). And where, as here, a plaintiff is proceeding *pro se*, the "complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), and the Court "may not serve as de facto counsel for a [*pro se*] party, or rewrite an otherwise deficient pleading in order to sustain an action." Ausar-El v. BAC Home Loans Servicing LP, 448 F. App'x 1, 2 (11th Cir. 2011) (per curiam) (citation and internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

As for Defendants' specific contention that Plaintiffs' suit was filed after the expiration of the applicable statute of limitations, such a claim is "'an affirmative defense, and plaintiffs are not required to [anticipate or] negate an affirmative defense in their complaint[s].'" La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (quoting Tregenza v. Great Am. Commc'ns Co., 12 F.3d 717, 718 (7th Cir. 1993)). Dismissal on limitations grounds is only appropriate "if it is apparent from the face of the complaint that the claim is time-barred." Gonsalvez v. Celebrity Cruises Inc., 750 F.3d 1195, 1197 (11th Cir. 2013) (quoting La Grasta, 358 F.3d at 845). "A statute of limitations defense can support dismissal under Rule 12(b)(6) only if it is clear . . . the statute of limitations has run, and it appears beyond doubt that the plaintiff can prove no set of facts that toll the statute." Valencia v. Universal City Studios LLC, No. 1:14–CV–00528–RWS, 2014 WL 7240526, at *3 (N.D. Ga. Dec. 18, 2014) (citations omitted).

## DISCUSSION

### I. The Parties' Arguments

Plaintiff filed the present action on April 18, 2019. (Doc. 1.) In his Complaint, Plaintiff asserts claims against Defendants pursuant to 42 U.S.C. § 1983 for their respective roles in his alleged unlawful arrest in violation of the Fourth Amendment and seeks damages for his subsequent conviction and incarceration.[3] (Id.) Specifically, Plaintiff alleges that Briley is liable

---

[3] In his Complaint, Plaintiff also asserts that the warrantless arrest violated his *Fourteenth* Amendment rights. (Doc.1, p. 1.) To the extent Plaintiff intended to assert a separate claim pursuant to the Fourteenth Amendment, it fails as a matter of law as "courts must analyze claims of wrongful arrest . . . 'under the Fourth Amendment's objective reasonableness standard.'" Hamm v. Powell, 893 F.2d 293, 294 (11th Cir. 1990) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)); see Albright v. Oliver, 510 U.S. 266, 273–74 (1994) (plaintiff could not assert Fourteenth Amendment claim where at-issue conduct involved "pretrial deprivations of liberty" as contemplated by the Fourth Amendment); West v. Davis, 767 F.3d 1063, 1067 (11th Cir. 2014) ("[W]hen a specific provision of the Constitution is allegedly infringed, a court must decide the claim in accordance with the terms of that provision rather than under the more generic rubric of the [Fourteenth Amendment's] substantive due process."). Thus, all of Plaintiff's claims will be analyzed under the Fourth Amendment and its applicable statute of limitations.

Additionally, while Plaintiff asserts that his conviction was "illegal," he does not explicitly challenge the conviction or assert claims against the Defendants specifically based on the conviction.

for "arresting him without an arrest warrant" and that Briley "act[ed] in concert" with and at the direction of Smith (his supervisor) to deprive Plaintiff of his constitutional rights. (Id. at pp. 6–7.) Plaintiff contends this deprivation was also caused by the City of Statesboro's failure to train its officers on Fourth Amendment compliance. (Id. at p. 7.)

In their Motion, Defendants argue that any Fourth Amendment claims arising from Plaintiff's arrest are barred by the applicable statute of limitations. (Doc. 7, pp. 1–2.) Plaintiff, on the other hand, contends his claims are timely because he filed his Complaint within two years of the expiration of his sentence. (Doc. 1, p. 2; doc. 8, p. 5.) As his conviction was based on the same evidence that precipitated his arrest, Plaintiff argues the "continuing wrong doctrine" and the "doctrine of adverse consequences" provide bases for his claims to remain before the Court. (Id.) However, for the reasons set forth below, the Court agrees with Defendants and finds that Plaintiff's Complaint is untimely and subject to dismissal.

## II. Analysis

### A. Plaintiff Did Not Timely File His Fourth Amendment Claim

As noted above, Defendants argue that any claim arising from the arrest is barred by the applicable statute of limitations and they move to dismiss Plaintiff's Complaint as untimely. (Doc. 7.) Constitutional claims brought pursuant to Section 1983 "are tort actions, subject to the statute

---

However, the terms of his damages request (i.e., a certain amount of damages for each of the five years he was incarcerated) and the fact that he requests "expunge[ment of] his conviction," (doc. 1, p. 8), sound like a challenge of the conviction and not just the arrest. See Heck v. Humphrey, 512 U.S. 477, 484 (1994) (explaining claims for false arrest or imprisonment only permit damages "cover[ing] the time of detention up until issuance of process or arraignment" and do not beget damages for confinement imposed pursuant to legal process). Regardless, Plaintiff has not stated a claim entitling him to recover damages for an allegedly unconstitutional conviction or imprisonment pursuant to § 1983 because, in order to do so, he "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Id. at 486–87. He has not alleged any of those sorts of facts or events.

of limitations [for] personal injury actions in the state where the § 1983 action [was filed]." Powell v. Thomas, 643 F.3d 1300, 1303 (11th Cir. 2011) (citation and internal quotation marks omitted). Thus, Georgia's statute of limitations period "for injuries to the person," O.C.G.A. § 9-3-33, which provides that such actions "shall be brought within two years" of a claim's accrual, governs this case. See Mullinax v. McElhenney, 817 F.2d 711, 716 n.2 (11th Cir. 1987) ("[T]he proper limitations period for all Section 1983 actions in Georgia is the two-year limitations period set forth in O.C.G.A. § 9-3-33."). A Section 1983 claim accrues when "the facts which would support [the] cause of action" are or should be reasonably apparent to the claimant. See Rozar v. Mullis, 85 F.3d 556, 561–62 (11th Cir. 1996) (citation omitted) (noting that federal law determines claim accrual). "This rule requires a court first to identify the alleged injuries, and then to determine when plaintiffs could have sued for them." Id. at 562.

Here, Plaintiff seeks to recover for injury caused by his August 7, 2011 warrantless arrest. (Doc. 1.) Claims arising from such conduct are categorized as claims for false arrest in violation of the Fourth Amendment. See Snodderly v. R.U.F.F. Drug Enf't Task Force, 239 F.3d 892, 899 n.9 (7th Cir. 2001) ("[A] claim for false arrest is a claim for the harm of being unlawfully imprisoned through some extrajudicial act that does not amount to legal process, for example, when a police officer performs a warrantless arrest without probable cause."). Under federal law, damages for a false arrest claim cover "the time of detention up until issuance of process or arraignment, but not more" because a false arrest ends "when legal process [is] initiated" against the plaintiff—"for example, [when] he is bound over by a magistrate or arraigned on charges"—and "the statute [of limitations begins] to run from that date." Wallace v. Kato, 549 U.S. 384, 390, 397 (2007) (equating false imprisonment and false arrest in discussing claim accrual and the statute of limitations, explaining that "[f]alse arrest and false imprisonment overlap").

Here, although the pleadings do not indicate the exact date that Plaintiff received or was detained pursuant to legal process after his arrest in 2011, the absence of such information is immaterial. (See Doc. 1.) The attachments to Plaintiff's Complaint show that he was tried and a jury verdict was returned on April 19, 2012. (Doc. 1-1, pp. 2–4.) Thus, even assuming—without deciding—that Plaintiff's false arrest claim did not accrue until his trial date, the two-year statute of limitations expired on or about April 19, 2014. See, e.g., Glenn v. Pressley, No. CV 117-088, 2018 WL 934867, at *5 (S.D. Ga. Feb. 16, 2018), *adopted by* No. CV 117-088, 2018 WL 1249902 (S.D. Ga. Mar. 9, 2018) (using plaintiff's trial date as an at-the-latest date of accrual where plaintiff did not specify the date he was bound over by the magistrate or arraigned on charges); Smith v. Todd, No. CV 508-039, 2008 WL 3850535, at *2 (S.D. Ga. Aug. 15, 2008) (assuming plaintiff's false arrest/imprisonment claim accrued at sentencing since it was unclear when plaintiff had appeared before a magistrate or otherwise been arraigned). Thus, Plaintiff's filing of this action on April 18, 2019 was at *least* five years past the expiration of the statutory limitations period. (Doc. 1.) Accordingly, the Court finds that Plaintiff's false arrest claim is barred by the statute of limitations.[4]

### B.     The "Continuing Wrong Doctrine" Does not Toll Plaintiff's Claim

In his Response in opposition to the Motion to Dismiss, Plaintiff argues that the "continuing wrong doctrine" applies here, resulting in a much later date of accrual for purposes of the Court's

---

[4] Since Plaintiff's claims against both Smith and the City of Statesboro stem from the alleged false arrest, they are time-barred as well. Plaintiff's Complaint also states that Defendant Briley effectuated the arrest "without a search warrant to seize him" from that location. (Doc. 1, p. 3.) To the extent Plaintiff intended to allege injury from an unconstitutional search under the Fourth Amendment, any such claim is also untimely and cannot survive Defendants' Motion to Dismiss. (See Doc. 7, p. 2.) A Section 1983 unlawful search claim accrues at the time of the search. Dominguez v. Hendley, 545 F.3d 585, 589 (7th Cir. 2008). Here, Briley searched Plaintiff's vehicle on August 7, 2011, and Plaintiff did not file the present action until April of 2019— nearly six years after the statute of limitations expired. (Doc. 1.)

8

statute of limitations analysis. (See Docs. 1, 8.) The "continuing wrong" (or "continuing tort") doctrine dictates the accrual of claims "where [the alleged] negligent or tortious act is of a continuing nature and produces injury in varying degrees over a period of time."[5] Everhart v. Rich's, Inc., 194 S.E. 2d 425, 428 (Ga. 1972). Said differently, the "continuing wrong doctrine is applicable to persistent wrongful action, *not* to persistent injury accruing from an earlier wrong." Howard v. Smith, No. 606CV062, 2008 WL 816684, at *2 (S.D. Ga. Mar. 26, 2008) (citing Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980)). While a claim alleging "a continuing wrong [accrues] when the [ongoing] wrongful conduct terminates," id., "if the [initial] act causing such subsequent damage is of itself unlawful in the sense that it constitutes a legal injury to the plaintiff, and is thus a completed wrong, the . . . statute begins to run from the time the act is committed, however slight the actual damage then may be," Risner v. R. L. Daniell & Assocs., P.C., 500 S.E.2d 634, 636 (Ga. Ct. App. 1998).

Here, Plaintiff argues that his arrest and ensuing incarceration qualify as a "continuing wrong" because his conviction (the basis for his five-year sentence of incarceration) was based on the same evidence used to justify his warrantless arrest. (Doc. 8, p. 3.) Thus, Plaintiff contends his claim did not accrue until he completed his sentence and was released.[6] (Id.) In actuality,

---

[5] While it is well-established that "[s]tate law generally determines tolling rules," Sneed v. Pam Am. Hosp., 370 F. App'x 47, 49 (11th Cir. 2010) (per curiam) (quoting Wallace, 549 U.S. at 394), it is equally well-established that "federal law governs the question of when th[e] limitations period begins to run," McCune v. Grand Rapids, 842 F.2d 903, 905 (6th Cir. 1988) (examining other circuits' applications of the continuing wrong doctrine to Section 1983 claim accrual). Regardless, given that the state and the federal versions of the doctrine are materially identical, it matters not whether this is technically an issue concerning tolling as opposed to one concerning claim accrual. See, e.g., Baker v. Sanford, 484 F. App'x 291, 293 (11th Cir. 2012) (citing federal cases and discussing when a "continuing tort" accrues); Mullinax, 817 F.2d at 717 n.4 (citing federal law); Ballew v. A. H. Robins Co., 688 F.2d 1325, 1327 (11th Cir. 1982) (relying on Georgia law to determine when continuing tort accrues). The outcome here is the same under both versions.

[6] As noted throughout this Order, Plaintiff seeks damages for the harm caused by the *consequences* of his arrest (that is, his incarceration), rather than the arrest itself. (Doc. 1, pp. 2, 7.) As addressed in footnote 3, supra, even assuming Plaintiff intended to assert additional claims for damages for his incarceration, these claims fail as a matter of law.

however, Plaintiff's situation is just the opposite of his attempted characterization: he suffered a continued *injury* caused by his initial arrest; that is, his incarceration was "the [ongoing] consequence of a one[-]time [alleged] violation, which [did] not extend the limitations period . . . ." Knight v. Columbus, 19 F.3d 579, 580–81 (11th Cir. 1994) (citation and internal quotations omitted). Indeed, courts have consistently found that, where the only act alleged to have precipitated the plaintiff's harm is the initial arrest, any subsequent detention "'constitutes an ill effect from the original false arrest' and thus is 'not independently actionable.'" Parrish v. City of Opp, 898 F. Supp. 839, 843 (M.D. Ala. 1995) (quoting McCune, 842 F.2d at 906); see Betts v. Hall, 679 F. App'x 810, 813 (11th Cir. 2017 (per curiam) (continuing violation doctrine did not apply to plaintiff's arrests because claims "stemmed from discrete, one-time violations"); Little v. Markely, No. 3:15-CV-0067-CAR, 2015 WL 4974150, at *2 (M.D. Ga. Aug. 20, 2015) ("The fact that Plaintiff is still incarcerated as a result of those events does not constitute a continuing violation."); Howard, 2008 WL 816684, at *2 (distinguishing claims arising from arrests to apply continuing wrong doctrine where plaintiff alleged "pattern of wrongful treatment" during detention). Accordingly, the continuing wrong doctrine does not apply to the facts of this case, and Plaintiff's false arrest claim is untimely and due to be dismissed.[7]

### C. The Doctrine of Adverse Collateral Consequences Does Not Apply to Plaintiff's Claims

Plaintiff also asserts a barebones argument that his case is properly before this Court under the "doctrine of adverse collateral consequences." (Doc. 8, p. 2.) Plaintiff specifically alleges that "Defendants'[] deprivation of constitutional rights continue[s] to affect [him] through 'collateral consequence' as he bears the burden of an illegal stigma in America's marketplace where he must

---

[7] Since the Plaintiff fails to assert that equitable tolling should apply, he has waived this extraordinary remedy and the Court will not address that issue any further. See Justice v. United States, 6 F.3d 1474, 1479 (11th Cir. 1993) ("The burden is on the plaintiff to show that equitable tolling is warranted.").

acquire job security for his growing family," but he neglects to explain how or why these ongoing effects impact the application of the statute of limitations here. (See Doc. 1, p. 2; doc. 8, pp. 2–3.) Regardless, Plaintiff's reliance on this doctrine is misplaced as the doctrine does not apply to Section 1983 actions. The collateral consequences doctrine is used in *habeas corpus* proceedings to determine whether a pending petition is moot. Where a *habeas* petitioner seeking to overturn a conviction is either (1) released from custody or (2) serving a valid, concurrent sentence for a separate offense, the pending appeal will be denied and dismissed as moot *unless* the petitioner demonstrates he could suffer "adverse collateral consequences" sans review. See In re Davis, 829 F.3d 1297, 1299 (11th Cir. 2016) (denial proper "if a defendant has concurrent sentences on multiple counts of conviction" unless defendant would suffer adverse collateral consequences) (citation omitted); United States v. Macias-Munoz, 460 F. App'x 426, 427 (5th Cir. 2012) (per curiam) ("If a defendant must remain imprisoned under a valid sentence, our court may decline to consider any issues pertaining to other sentences . . . if no adverse collateral consequences attach as a result."); Watkins v. Haynes, 445 F. App'x 181, 183 (11th Cir. 2011) (per curiam) ("If a petitioner's sentence expires while his habeas petition is awaiting adjudication, some collateral consequence must be present in order to satisfy the case-or-controversy requirement."); Abebe v. State, 820 S.E. 2d 678, 679 (Ga. 2018) ("[I]f the petitioner is released from any confinement imposed after filing her habeas petition and there are no adverse collateral consequences flowing from her misdemeanor conviction, the matter becomes moot.").

Here, not only does Plaintiff clearly assert violations of his constitutional rights pursuant to Section 1983, but, based on the pleadings, he does not have a habeas petition pending. (Doc. 1, p. 1; doc. 8, p. 1.) As such, the Court cannot conceive of a way that this doctrine would apply to Plaintiff's claims, much less a way that would impact the accrual date or require tolling of the

statute of limitations. See generally Boyd v. Warden, Holman Corr. Facility, 856 F.3d 853, 877 (11th Cir. 2017) (noting that "[h]abeas and § 1983 are 'mutually exclusive' avenues for relief") (citation omitted).

### III. Plaintiff's Claims are Futile and Cannot be Amended.

For the reasons explained herein, Plaintiff's claims do not survive Defendants' Motion to Dismiss. Generally, the Court must provide a *pro se* plaintiff at least one opportunity to amend his claims before dismissing a complaint, "even if the plaintiff never seeks leave to amend." Silva v. Bieluch, 351 F.3d 1045, 1049 (11th Cir. 2003); see also Duff v. Steub, 378 F. App'x 868, 872 (11th Cir. 2010) (per curiam) ("When it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give [him] an opportunity to amend his complaint instead of dismissing it."). However, a district court is not required to grant "even a *pro se* plaintiff leave to amend where amendment would be futile." Hunt v. Nationstar Mortg., LLC, 684 F. App'x 938, 944 (11th Cir. 2017) (per curiam). An amendment "is futile when the complaint as amended would still be properly dismissed." Silberman v. Miami Dade Transit, 927 F.3d 1123, 1133 (11th Cir. 2019) (quoting Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007)).

As explained above, Plaintiff's Section 1983 claims arising from his arrest are time-barred as he filed his Complaint well outside the two-year statute of limitations. Additionally, Plaintiff did not cite to an applicable tolling doctrine. Thus, any amendment would be futile as no set of facts surrounding Plaintiff's arrest could state a plausible and timely claim for relief under the Fourth Amendment. Accordingly, the Court declines to grant Plaintiff leave to amend. See, e.g., Hunt, 684 F. App'x at 944 (affirming lower court's finding that amendment would be futile where it was clear the statute of limitations had expired); O'Berry v. State Attorneys Office, 241 F. App'x.

654, 658–59 (11th Cir. 2007) (per curiam) (holding that the district court did not err in denying leave to amend because plaintiff's Section 1983 action was clearly time-barred).

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss, (doc. 7), and **DISMISSES with prejudice** Plaintiff's Complaint. The Court **DIRECTS** the Clerk of Court to enter an appropriate judgment of dismissal and to **CLOSE** this case.

**SO ORDERED**, this 17th day of January, 2020.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA